DELIA M. SMITH *vs.* HUBERT O. SMITH.

Cumberland.    Opinion October 22, 1921.

*A libel for divorce may be inserted in a trustee process for service in this State as it is
a writ of attachment. The residence of the trustee may limit its use, but it
is an appropriate process whenever the court may obtain juris-
diction of all the parties.*

The trustee process in this State is a writ of attachment and a libel for divorce
may be inserted therein for service.

The use of it may be limited by the residence of the trustee, but it is no less an
appropriate process whenever the court may thereby obtain jurisdiction of all
the parties.

A proceeding for divorce is not a real action. It is not necessary to decide in this
case whether it is a personal action within the meaning of Sec. 1, Chap. 91, R. S.,
as the Legislature might authorize its use in other cases at any time which it
is held was done under Chap. 122, Public Laws, 1862, now Sec 3, Chap. 65,
R. S.

Not decided whether want of proper service may be waived or cured in divorce
proceedings by general appearance and pleading to the merits of the libel.

On exceptions by libellant. This is an action of libel for divorce.
The libel was inserted in a trustee writ which was served on the
alleged trustees and subsequently service of the writ and libel was
made upon the libellee. Libellant also filed a petition praying for
an allowance, which was duly served upon the libellee who entered a
general appearance through his attorney upon return day, and upon
a hearing on said petition libellee was ordered to pay to the libellant
for the support of herself and child twenty dollars per week pending
the libel, and fifty dollars for counsel fees. There being no funds of
libellee in the hands of the alleged trustees, they were discharged
before the entry of the writ and libel.

The writ and libel were entered at the return term and the libellee,
through his attorney, filed a general appearance and answered to the
libel, denying the allegations therein. Upon a hearing on the writ
and libel at which the libellee appeared, the Justice presiding granted

a divorce, and gave to the libellant the custody of the minor child, and ordered libellee to pay to libellant as alimony twenty dollars per week. At the same term of court libellee filed a motion that the decree be vacated and the action be dismissed for want of jurisdiction on the ground that the libel for divorce was inserted in and begun by a trustee writ and process. The Justice presiding granted the motion, vacated the decree and dismissed the action for want of jurisdiction, to which ruling the libellant excepted.. Exceptions sustained.

Case stated in the opinion.

*Frank H. Haskell*, for libellant.

*Henry Cleaves Sullivan*, for libellee.

SITTING: CORNISH, C. J., SPEAR, PHILBROOK, DUNN, WILSON, DEASY, JJ.

WILSON, J. A libel for divorce was begun by the libellant and inserted in the form of writ prescribed in this State for what is termed trustee process. The writ and libel were then duly served and entered at the return term in September, 1920, at which term the libellee appeared generally and answered.

At the October term following, a hearing was had, at which time the libellee appeared and contested the libel on its merits. No question of jurisdiction was then raised. A decree of divorce was made, and the libellee was ordered to pay alimony to the libellant. At the same term, after the decree of divorce was filed, the libellee filed a motion that the decree be vacated and the libel be dismissed, on the ground that the court was without jurisdiction of the libellee there not being proper service of the libel, inasmuch as it was inserted in a trustee writ, which mode of service, it was contended, is not authorized by the statutes of this State, and which lack of service in divorce proceedings, it was also contended, is not cured by a general appearance and pleading to the merits, or even by participating in a hearing on the merits of the charges.

The court after hearing sustained the motion, vacated the decree and dismissed the action for want of jurisdiction, to which ruling the libellant excepted and presents her bill of exceptions to this court.

We are of the opinion that the libel was properly served. R. S., Chap. 65, Sec. 3, provides that a libel for divorce may be inserted in a writ of attachment. The purpose of the Act authorizing this mode

of service, Public Laws, 1862, Chapter 122, was to give to both parties the right to attach both real and personal property to secure the enforcement of any decree the court might make in such proceedings. It was substituted for a method which allowed the wife to secure a lien on the real estate only of the husband by inserting a prayer to that effect in her libel under Sec. 12, Chap. 60, R. S., 1857.

The libellee's contention is based on the theory that the writ of attachment referred to in this Act is the one in common use when property is attached, which is described in the Works on Practice as a writ of summons and attachment, Spaulding's Practice, Pages 48-52, Howe's Practice, Pages 54-58, Colby's Practice, Page 64, in distinction from the other original processes provided for in the first Act regulating civil processes in this State, Chapter 63, Public Laws, 1821, i. e.: the simple summons, the writ of capias and attachment, and the trustee writ of attachment.

The common law writ of attachment known as the *"pone"* from the language of the writ itself, *"pone per vadium et salvos plegios,"* i. e. put by gage and safe pledges the defendant, 3 Blackstone Com. *Page 280, though it has no place in our practice is the precursor of the various forms of writs of capias and of attachment now in use to secure the appearance and conformance of the defendant to the judgments of the court, as the custom of Foreign Attachment anciently in use in the City of London is the origin of our present trustee process, Drake on Attachment, Section 1.

All civil processes in use in this State, however, are the creation of statute; and according to the course of practice and the origin of the civil processes in use here, the phrase, writ of attachment, which in the Act of 1862 was used, we think, in a generic sense, can have no other meaning than any mesne civil process in the nature of a writ on which property may be attached. The issue then is, whether the process known in this State as the trustee process is a writ of attachment within the meaning of this Act.

Whatever may be the nature of this process in other jurisdictions, it is clearly recognized as one of attachment in this State under the statute authorizing its use and prescribing its form. Sec. 1, Chap. 61, Public Laws 1821, provides that the plaintiff in any personal action may cause the goods and effects of the defendant "to be *attached* in whose hands or possession soever they may be found by an original writ . . . . in the form prescribed by law." This court in

*Pettingill* v. *Andros. R. R. Co.*, 51 Maine, 370, said: "But if he had goods or effects of the principal debtor deposited in his hands liable to attachment, the service of the writ operates as an attachment of the specific articles in his possession." And Sec. 6, Chap. 63, Public Laws 1821, prescribing the form of this process describes it as a trustee writ of attachment.

Inasmuch, then, as the purpose of the statute authorizing attachment in divorce proceedings as expressed in the Act of 1862 is to secure the execution of the decrees of the court through acquiring liens on either the real or personal property of the libellee by attachment on the original process as it were; and this purpose may be attained by the use of any appropriate process on which property may be attached; and the libellant's means of obtaining this security would be materially restricted by denying the right of attachment by the familiar method of trustee process; and the trustee process provided in this State being a writ of attachment in fact and in name, we are of the opinion that it is a proper mode of service of libels for divorce under the Act of 1862, Chap. 122, and now contained in R. S., Chap. 65, Sec. 3, to insert them in a trustee writ of attachment.

This view is confirmed by a practice of the Bar of this State for nearly sixty years. A practice, so far as we know, heretofore unquestioned. The consequences of now declaring its use unauthorized and the defective service incurable, even by a general appearance and pleading to the merits, are so far-reaching, affecting the social and legal standing of so many innocent parties, that unless it was made to appear that the contrary view was clearly intended, the interests of society require that the construction placed upon this statute in practice since its enactment be confirmed by this court, and especially so, since it seems to accord with a fair construction of the language and purpose of the Act itself.

The use of it may be limited by the residence of the trustee, *Linscott* v. *Fuller*, 57 Maine, 406, 409, but we think it no less an appropriate process whenever the court may thereby obtain jurisdiction of all the parties.

Against this construction, it is urged that the trustee writ being a statutory process, the original Act of 1821, Chap. 63, and R. S., Chap. 91, Sec. 1, relating to trustee process only authorizes its use in personal actions. This, however, is beside the mark. While a divorce action may in part partake of the nature of an action *in rem*,

it is in no sense a real action within the meaning of the statute last referred to.   As to whether it is a personal action, it is unnecessary to determine, as special use of this process in other cases might at any time be authorized by legislative act which, we think, was the effect of Chapter 122, Public Laws 1862.

It is further suggested that the Act of 1862 was in effect, at least, an adoption of the Massachusetts Statute relating to attachment in divorce proceedings and that the Commonwealth afterwards expressly added to its statute the authority to attach by trustee process.   Not so.   The Massachusetts Statute prior to 1862, see Gen. Statutes, 1860, Chap. 107, Secs. 51, 52 was similar to Sec. 12, Chap. 60, R. S., 1857 in that it authorized in certain cases the attachment of the husband's property on the libel of the wife.   No writ of attachment of any kind in the ordinary sense of that term was required under the Massachusetts Statutes.   It was done upon the summons or order of notice issued by the court.   The addition of the authority to attach property in the hands of an alleged trustee by inserting such direction in the summons issued for service of the libel as was done in Massachusetts in 1866, see supplement to Gen. Statutes 1860-66, Chap. 148, has no significance, we think, as bearing on the question of whether the trustee writ of attachment was intended to be included within the term "writ of attachment" in the Act passed by the Legislature of this State in 1862.   Massachusetts still retained the method of attaching upon the summons issued in connection with a libel and, of course, required additional authority to attach property in the hands of an alleged trustee by this method.   As bearing on the issue in the case at bar, the Massachusetts Act of 1866 amounts to no more than a recognition of the need of such process to more fully accomplish the purpose of  the previous statutes authorizing the attachment of property in divorce proceedings.   Hence, the law-making body of this State may well have had the trustee process in view when it used the broad term "writ of attachment" as a substitute for the method of attaching on the libel previously authorized under Sec. 12, Chap. 60, R. S., 1857.

It is unnecessary to decide whether want of proper service may be waived or cured in divorce proceedings by the general appearance of the libellee and submission to the jurisdiction of the court by pleading and participating in a hearing on the merits of the action.

*Exceptions sustained.*